**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

**TEGRA MEDICAL HOLDINGS LLC**
16 Forge Park
Franklin, MA 02038 and

**Luis FLORES CASTILLO**
House D 22, La Armonia Street,
in front of Supermercado Monte Hiedra,
Barva, Heredia, Costa Rica 40203

***Plaintiffs*,**

v.

**Tracy TARANGO,** in her Official Capacity
Director of the California Service Center
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
2642 Michelle Drive
Tustin, California 92780

**Andrew J. DAVIDSON**, in his Official Capacity
Acting Director, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security
C/o Office of General Counsel
5900 Capital Gateway Drive, Mail Stop 2120
Camp Springs, MD 20588-0009

**Kristi NOEM,** in her Official Capacity,
Secretary, U.S. Department of Homeland Security
C/o Office of General Counsel
5900 Capital Gateway Drive, Mail Stop 2120
Camp Springs, MD 20588-0009

**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES**
C/o Office of General Counsel
5900 Capital Gateway Drive, Mail Stop 2120
Camp Springs, MD 20588-0009

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY**
C/o Office of General Counsel
5900 Capital Gateway Drive, Mail Stop 2120
Camp Springs, MD 20588-0009

***Defendants*.**

**CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 702, *et. seq.***

Case No. 25-cv-11018

**COMPLAINT**

1. Plaintiff Tegra Medical Holdings LLC ("Tegra" or "the Company") brings this action to challenge an immigration denial. Here, the immigration agencies – U.S. Citizenship and Immigration Services ("USCIS" or "the Service") and its California Service Center – improperly and arbitrarily denied Plaintiff's petition for L-1B nonimmigrant status and concurrent Extension of Stay request on Form I-129 ("the L-1B Petition") for beneficiary Luis Flores Castillo. Because the agency actions were arbitrary and capricious, without legal or factual basis, and because they will cause irreparable harm to Plaintiffs, Plaintiffs are entitled to equitable relief from this Court.

2. Plaintiff Tegra, a United States based company, brings this action for wrongful denial of the beneficiary's L-1B Petition pursuant to Section 10b of the Administrative Procedure Act, 5 U.S.C. § 702, *et. seq.*, seeking to hold unlawful and set aside the decision of USCIS and the Director of the California Service Center ("CSC" or the "Director") dated December 13, 2024 denying the L-1B petition that Tegra filed on behalf of Mr. Flores Castillo.

3. This case concerns Defendants' erroneous denial of the L-1B Petition that sought to enable the continued intracompany transfer of a highly skilled and experienced Quality Engineer from the Company's affiliate in Costa Rica to its facility in the U.S. The Quality Engineer role is an essential part of Tegra's continued operations in the United States, as well as its plans for expansion and increased production, as the role is responsible, in part, for training U.S. workers.

4. In its denial, USCIS misapplied the applicable law for eligibility for L-1B nonimmigrant status on three grounds: 1) whether the position abroad involved specialized knowledge; 2) whether the beneficiary has specialized knowledge; and 3) whether the proposed position in the United

States involves specialized knowledge. The denial is arbitrary and capricious, not supported by substantial evidence in the record, is contrary to established legal precedents, and constitutes an abuse of discretion.

5. USCIS' unlawful denial prevents Tegra from being able to utilize an essentially skilled, highly-qualified employee who has generated over $30 million in annual revenue, played a key role in training other employees, and contributed significantly to the company's overall growth and success.

6. This action asks the Court to hold unlawful and set aside the denial of L-1B status requested on behalf of Mr. Flores Castillo, and seeks an order that USCIS grant the L-1B Petition.

## PARTIES

7. Tegra Medical Holdings LLC, a Massachusetts-based LLC and a wholly owned subsidiary of SFS Group AG, is a contract manufacturer of finished medical devices and complex components including surgical instruments, needles, and implants. Tegra has a net worth of more than USD $7 million as contemplated by the *Equal Access to Justice Act*, 28 U.S.C. § 2412.

8. Luis Flores Castillo, a resident of Heredia, Costa Rica, is the intended beneficiary on the L-1B Petition. Mr. Flores Castillo has a net worth of less than USD $2 million as contemplated by the *Equal Access to Justice Act*, 28 U.S.C. § 2412.

9. The U.S. Department of Homeland Security is the federal agency bearing responsibility for administration and enforcement of the nation's immigration laws.

10. Defendant Kristi Noem is sued in her official capacity as Secretary of the U.S. Department of Homeland Security, in which she is charged with the just administration and enforcement of the immigration laws. 8 U.S.C. § 1103(a).

11. Defendant USCIS is an entity within the Department of Homeland Security, 6 U.S.C. § 271, and is defined as an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for the adjudication of immigration benefits, including nonimmigrant visa petitions, and it is the agency that denied the L-1B at issue in this matter. As used below, "USCIS" refers to both the USCIS and predecessor agency U.S. Immigration and Naturalization Services.

12. Defendant Andrew J. Davidson is sued in his official capacity as Acting Director of USCIS. In this role, Acting Director Davidson oversees the adjudication of immigration benefits within the United States. Acting Director Davidson has final responsibility for the review and ultimate denial of Plaintiffs' L-1B Petition.

13. Defendant Tracy Tarango is sued in her official capacity as Director of the California Service Center of USCIS, which denied Tegra's L-1B Petition on behalf of Mr. Flores Castillo on December 13, 2024.

## JURISDICTION

14. This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 *et seq.* Moreover, this court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the issue relates to a federal question. The Court also has authority to grant declaratory relief under 28 U.S.C. § 2201 and injunctive relief under the Administrative Procedure Act.

15. Because Defendants' decision on a petition for L-1B visa status is not discretionary, neither the immigration laws (see, e.g., 8 U.S.C. § 1252(a)(2)(B)(ii)) nor the APA withdraws jurisdiction. *See, e.g.*, *Spencer Enterprises, Inc. et al v. United States*, 345 F.3d 683 (9th Cir. 2003); *Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1138 (D.C. Cir. 2014).

16. Indeed, under these sections of the federal law, the United States has waived its sovereign immunity as a judgment or decree may be entered against it under 5 U.S.C. § 702.

## STANDING

17. Tegra Medical Holdings LLC has standing to bring this action as the petitioner of the L-1B petition that USCIS erroneously denied. 5 U.S.C. § 702.

18. Mr. Flores Castillo has standing and a legally protected interest as the beneficiary of the L-1B petition who suffered legal wrong because of the agency's action. 5 U.S.C. § 702.

## VENUE

19. Venue in the District of Massachusetts is proper under 28 U.S.C. § 1391(e) because this is a civil action where Plaintiff Tegra maintains its principal place of business within this judicial district, and the Defendants in this matter are Officers and Employees of the United States.

## EXHAUSTION

20. USCIS' decision to deny Plaintiff's immigration petition is a final agency decision ripe for judicial review, and Plaintiff need not have sought an appeal before USCIS' Administrative Appeals Office before invoking the jurisdiction of this Court. *See, e.g., Darby v. Cisneros,* 509 U.S. 137, 153-54 (1993); *Trafalgar Capital Associates, Inc. v. Cuomo,* 159 F.3d 21, 35-36 (1st Cir. 1998).

## LEGAL BACKGROUND

21. In 1970, Congress created the L visa classification for multinational firms to "eliminate problems… faced by American companies having offices abroad in transferring key personnel freely within the organization." *See generally* H.R. Rep. No. 91-81, § 1(b), at 5 (1970), as reprinted in 1970 U.S.C.C.A.N. 2750, 2754.

22. The L-1B immigration classification allows a U.S. entity to transfer a foreign national employee from a related entity abroad to work temporarily for a related U.S. entity in a capacity

that involves specialized knowledge. INA § 101(a)(15)(L); 8 U.S.C. § 1101(a)(15)(L). The L-1 beneficiary is referred to as an "intracompany transferee." The employee must have worked for at least one year continuously in the preceding three years for the related foreign entity. *Id*. The agency promulgated regulations to implement the statutory provisions. *See* 8 C.F.R. § 214.2(*l*).

23. The statute defines "specialized knowledge" as follows:

> an alien is considered to be serving in a capacity involving specialized knowledge with respect to a company if the alien has a special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company.

INA § 214(c)(2)(B); 8 U.S.C. § 1184(c)(2)(B).

24. Similarly, the regulatory definition of "specialized knowledge" in the L-1B context provides:

> special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

8 CFR § 214.2(l)(1)(ii)(D).

25. These statutory and regulatory definitions of the L-1B "specialized knowledge" clarify that specialized knowledge can either be special knowledge, which involves expertise in an organization's products or services and its application in international markets, or advanced knowledge, which refers to a deep understanding of the organization's processes and procedures. *Id*.

26. These statutory and regulatory definitions of the L-1B "specialized knowledge" classification, unfortunately, fail to provide a more specific explanation as to what constitutes "specialized knowledge." Therefore, the Service issued several policy memoranda over the last two decades in an attempt to clarify this term. The most recent amendment to USCIS's Policy Manual on

August 16, 2022, superseded and rescinded all preceding memoranda, and is now located in Volume 2, Part L, Chapter 4, in its totality.

27. The USCIS Policy Manual and USCIS Policy Memoranda establish official USCIS policies and guide immigration officers in their decision-making. *See* https://www.uscis.gov/laws-and-policy/policy-memoranda. "In addition to the USCIS Policy Manual, USCIS policy memoranda contain the official policies of USCIS and assist immigration officers in rendering decisions. These policy memoranda are to be followed by USCIS officers in the performance of their duties…" *Id.*

28. The USCIS Policy Manual says that, with respect to either specialized or advanced knowledge, the petitioner generally must demonstrate that the beneficiary's knowledge is not commonly held throughout the industry. *See* U.S. Citizenship and Immigration Servs., *Specialized Knowledge Beneficiaries (L-1B),* USCIS Policy Manual, Vol.2, Pt. L, Ch. 4.

29. The USCIS Policy Manual also clarifies that specialized knowledge concerns knowledge of the petitioning organization's products or services and its application in international markets, so the petitioner may meet its burden through evidence that the beneficiary has knowledge that is distinct or uncommon in comparison to the knowledge of other similarly employed workers in the particular industry. *Id.*

30. It is not sufficient to demonstrate that the beneficiary has general knowledge of processes and procedures common to the industry, but the evidence must support that such knowledge is apart from the elementary or basic knowledge possessed by others. *Id.*

31. The USCIS Policy Manual also provides a non-exhaustive list of factors to consider when making a determination as to specialized knowledge:

> - The beneficiary possesses knowledge of foreign operating conditions that is of significant value to the petitioning organization's U.S. operations;
> - The beneficiary has been employed abroad in a capacity involving assignments that have significantly enhanced the employer's productivity, competitiveness, image, or financial position;
> - The beneficiary's claimed specialized knowledge is normally gained only through prior experience with the petitioning organization;
> - The beneficiary possesses knowledge of a product or process that cannot be easily transferred or taught to another person without significant economic cost or inconvenience (because, for example, such knowledge may require substantial training, work experience, or education);
> - The beneficiary has knowledge of a process or a product that either is sophisticated or complex, or of a highly technical nature, although not necessarily unique to the petitioning organization; or
> - The beneficiary possesses knowledge that is particularly beneficial to the petitioning organization's competitiveness in the marketplace.
>
> This list of factors is meant to be illustrative, not exhaustive, and it does not impose requirements that a petitioner must meet.

U.S. Citizenship and Immigration Servs., *Specialized Knowledge Beneficiaries (L-1B),* USCIS Policy Manual, Vol.2, Pt. L, Ch. 4.

## **FACTUAL BACKGROUND**

32. Tegra Medical Holdings, LLC is a contract manufacturer of finished medical devices and complex components including surgical instruments, needles, and implants. Exhibit B at 31. Tegra is a subsidiary of SFS Acquisition Holding, Inc., a holding company wholly-owned by SFS Group USA, Inc. Exhibit B at 32. Tegra develops and manufactures primarily disposable products made of metal and plastic for global, leading medical device OEMs and is known for its unique ability to integrate common and non-traditional technologies, such as laser cutting with CNC grinding and metal forming, to make complex products, which range from surgical fasteners, retractors and spreaders, stylets and cannulas, and implants to other medical instruments. Exhibit C at 213-214. Its headquarters are located in Franklin, Massachusetts,

with additional facilities in Dartmouth, Massachusetts; Hernando, Mississippi; Heredia, Costa Rica; Altstätten, Switzerland; Hallau, Switzerland; Heerbrugg, Switzerland; Johor Bahru, Malaysia; and Nantong City, China. Exhibit B at 31. Tegra currently employs approximately 791 people in the United States. Exhibit B at 32.

33. Mr. Flores Castillo was employed by Tegra Medical, La Aurora, a manufacturing plant branch office of Tegra Medical Holdings, LLC, located in Heredia, Costa Rica, from July 2014 to February 2022 in various, progressively responsible positions. Exhibit B at 33. His most recent role for Tegra Medical, La Aurora was as a Jr. Quality Engineer from January 2018 to February 2022. Exhibit B at 33-34. During his tenure at Tegra Medical, La Aurora, Mr. Flores Castillo gained a deep understanding of highly specialized areas of quality engineering, including extensive use of Test Method Validation (TMV) to verify testing methods, Six Sigma Methodologies to drive continuous improvement, and a strong knowledge of regulatory standards, which is extremely important in the medical device industry to maintain compliance across international markets. Exhibit C at 217-218. Mr. Flores Castillo also gained significant expertise in Root Cause Analysis documentation, Process Failure Modes and Effects Analysis (PFMEA), process flow diagrams, process flow work instructions, and the training plan for Root Cause Analysis. Exhibit C at 28. In total, Mr. Flores Castillo participated in over 240 training classes from July 2014 until February 2022. Exhibit C at 25, 83-107.

34. Mr. Flores Castillo applied for, and was approved for, Blanket L-1B status from the U.S. Embassy in San Jose, Costa Rica on January 27, 2022. Exhibit B at 33, 114-122. Laura Golland, Vice Consul for the United States of America, approved Mr. Flores Castillo's Blanket L-1B as a specialized knowledge professional with validity dates from January 27, 2022 to October 31, 2024. Exhibit B at 114.

35. Mr. Flores Castillo worked for Tegra in the United States as a Quality Engineer from February 2022 until his L-1B extension was denied on December 13, 2024, pursuant to his approved L-1B. Exhibit B at 33, 126-150. While in this U.S.-based position, Mr. Flores Castillo was able to bring expertise from skills he learned, developed, and honed with Tegra Medical, La Aurora to significantly improve Tegra's documentation, process optimization, and problem-solving frameworks. Exhibit C at 28. Mr. Flores Castillo directly impacted the automation and subsequent volume increases for various projects for customers and played an instrumental role in greater than $30 million in annual revenue for the Company. Exhibit C at 28, 167-182. Mr. Flores Castillo was also essential in providing trainings to individuals in the United States, including techniques for process control, statistical analysis, and quality assurance best practices. Exhibit C at 218, 245. In addition, Mr. Flores Castillo continued to stay abreast of new trends in quality engineering and continued to take more training courses, with over 396 hours (or around 16.5 calendar days) of training completed in just 2023-2024 alone. *See* Exhibit C at 228-241.

36. Tegra determined that Mr. Flores Castillo's deep understanding of the specific products manufactured by the Company, his instrumental work in automation and subsequent volume increases, and his understanding of the strict quality and regulatory standards that are necessary and varied throughout international markets necessitated extending his L-1B status. *See* Exhibit C at 216-218. Hence, the Company filed the L-1B Petition extension on July 15, 2024. Copies of the I-129 petition, supporting letter from Tegra, and supporting documents in their entirety are attached as Exhibit B.

37. USCIS challenged the L-1B Petition on four grounds in its Request for Evidence ("RFE") dated August 21, 2024: 1) whether there was one continuous year of employment abroad; 2)

whether the position abroad involved specialized knowledge; 3) whether the beneficiary has specialized knowledge; and 4) whether the proposed position in the United States involves specialized knowledge. Exhibit C at 41-46.

38. Tegra responded to the RFE with a majority of the information and documents requested by Defendant USCIS on November 13, 2024. A copy of the RFE response in its entirety is attached as Exhibit C. The response document totaled 245 pages with exhibits and included, among other documents, updated organization charts, a list of Mr. Flores Castillo's completed trainings with Tegra Medical, La Aurora, updated employment confirmation letters with more explanation of his specialized knowledge and positions with the company, as well as purchase orders from Tegra customers, presentations of projects he participated in, comparisons of Tegra's Jr. Quality Engineer and Quality Engineer roles to similar roles in other organizations, certificates of trainings earned while with Tegra in the US, and a list of trainings he provided to other Tegra employees. While Plaintiff asserts that the initial petition was sufficient as filed for USCIS to approve L-1B classification, this additional information and documentary evidence in support only further solidified the strength of Tegra's case.

39. USCIS, acting through Tracy Tarango as Director of the California Service Center, ultimately denied the L-1B Petition on December 13, 2024, on three of the four grounds questioned in the RFE. Exhibit A. USCIS accepted that Mr. Flores Castillo was employed for one continuous year abroad, but denied the petition alleging Tegra failed to prove 1) that the position abroad involved specialized knowledge; 2) that the beneficiary has specialized knowledge; and 3) that the proposed position in the United States involves specialized knowledge. Exhibit A. USCIS supplied no evidence to the record to support its position and—aside from summarily

dismissing the copious evidence of specialized knowledge in the record supplied by Tegra—failed to analyze and explain how or why this evidence was insufficient.

## STATEMENT OF CLAIMS

### COUNT I – Violation of the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq*., and Violation of the Immigration and Nationality Act, § 101(a), *et seq*., and its Implementing Regulations, 8 C.F.R. § 214.2(*l*), *et seq.*

### A. USCIS Arbitrary and Capricious Finding, not in Accordance with the Law, that Mr. Flores Castillo's Position Abroad was not Specialized or Advanced and that Mr. Flores Castillo does not have Special or Advanced Knowledge.

40. Plaintiffs re-allege and incorporate by reference, as if fully restated, the facts and allegations in all preceding paragraphs.

41. The Administrative Procedure Act (APA) empowers this Court to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

42. "While judicial review of agency decisions is highly deferential, it is not without teeth." *Raj & Co. v. U.S. Citizenship & Immigration Servs.*, 85 F. Supp. 3d 1241, 1248 (W.D. Wash. 2015). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

43. The agency's decision still must be "reasonable and reasonably explained." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018).

44. "The APA empowers courts to:

> strike down an agency action as arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or if the agency's decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 732 (9th Cir. 2017) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

45. "[I]f the agency has . . . entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that run counter to the evidence," its action is generally deemed arbitrary and capricious. *Animal Legal Defense Fund*, 872 F.3d at 611 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

46. Where the issue involves the interpretation of a statute or regulation, the first step is for the court to consider the statutory or regulatory language. Where the language is plain, the court is bound to implement it as written. Where the language is ambiguous, the court is no longer required to defer to the agency's interpretation, even if it is reasonable. Instead, the court must interpret the statute independently, considering the plain language and legislative intent. *Loper Bright Enterprises v Raimondo*, 603 US 369 (2024). When the court is engaged in statutory interpretation, however, they may use the agency's interpretation to "help inform that inquiry." *Id.* at 413.

47. In contrast, courts may still look to agency actions for guidance, particularly those that are not formal, binding statements of the agency's interpretation of the law. *See generally Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). In such cases, the level of deference depends upon "the thoroughness evident in [the agency's] consideration [of the issue], the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id. See also Fogo de Chao (Holdings) Inc. v. USDHS*, 769 F.3d 1127, 1136 (D.C. Cir. 2014) (finding USCIS' interpretation of its specialized knowledge regulation did not merit deference, in part, because the regulation "largely parrots" the statute).

48. USCIS' decision dated December 13, 2024, denying Tegra's L-1B petition ran counter to the evidence, was implausible, and was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

49. In denying Plaintiff's L-1B petition, USCIS failed to consider and weigh the evidence in context and as a whole as required under agency precedent. See *Matter of Z-A-*, Adopted Decision 2016-02 at *4 (AAO April 14, 2016) (when determining whether a beneficiary's job duties will be primarily managerial, USCIS "must" consider the "totality of the record and weigh all relevant factors").

50. USCIS asserted that, "There is no supporting documentary evidence to show that the beneficiary's knowledge rises above the level of his peers, when compared with other employees' knowledge, education, training, and employment with your organization." Exhibit A at 6, 8.

51. The claim that there is no evidence to show that the beneficiary's knowledge rises above the level of his peers is irreconcilable with the evidence that was provided to USCIS for both the original petition and in the response to the RFE.

52. In the RFE response, Tegra provided a letter from Tegra Medical, La Aurora explicitly detailing Mr. Flores Castillo's position abroad, noting that the knowledge necessary for the Jr. Quality Engineer position requires a four-year degree along with 2-3 years of working in the manufacturing, quality and process disciplines. Exhibit C at 112. The letter further confirms that Mr. Flores Castillo has in-depth industry specific knowledge, such as FDA standards and Good Manufacturing Practices, along with expertise in process validation and verification activities, which are highly technical processes that aren't often held by Jr. Quality Engineers. *See* Exhibit C at 22, 112, 114-119.

53. Tegra provided job descriptions for positions comparable to the Jr. Quality Engineer role, primarily from manufacturing companies, with most coming from medical device manufacturers. Exhibit C at 114-119. On average, these roles require a bachelor's degree and one year of experience. Notably, none of these positions require knowledge of Test Method Validation (TMV), a highly specialized skill within quality engineering, particularly in the highly regulated medical device industry. These jobs also did not require any knowledge of other verification and validation techniques, such as Installation Qualification (IQ), Operational Qualification (OQ), or Performance Qualification (PQ). USCIS failed to even mention this job comparison that was included in the RFE response in the denial.

54. This knowledge of TMV and other verification and validation techniques is not required for other similarly situated positions in the manufacturing industry, even in medical device manufacturing, yet is critical to Tegra's process and requires individuals that have experience in these tools to qualify for the Jr. Quality Engineer role. Exhibit C at 112.

55. Mr. Flores Castillo possessed highly sought-after knowledge before his transfer to the U.S., making his relocation to Tegra essential. His transfer brought Tegra a structure for essential quality engineering documents, such as control plans, Process Failure Modes and Effects Analysis (PFEMA), and other critical process flow documentation. Exhibit C at 28. This knowledge contributed significantly to the U.S. team by improving their documentation, process optimization, and problem-solving frameworks.

56. There is no indication that USCIS considered the evidence above along with the totality of the record, instead focusing on pointing out specific pieces of evidence that, in isolation, might not show that the position abroad requires specialized knowledge. *Compare* Exhibits B and C *with* Exhibit A. For instance, USCIS noted that the training documents provided do not sufficiently

explain the details of the training and therefore do not show special or advanced knowledge. Exhibit A at 5, 7. USCIS similarly asserts, absent comprehensive analysis in context of the record as a whole, that the letter confirming Mr. Flores Castillo's employment abroad and the work samples included with the RFE fail to sufficiently explain the special or advanced nature of the position. Exhibit A at 5-6.

57. It is incumbent upon USCIS to consider the "totality of the record" and to "weigh all relevant factors," yet it is evident that they disregarded key evidence and arguments. *See Matter of Z-A-*, Adopted Decision 2016-02 at *4. For example, the job requirements supplied to the record for positions that are similar in a similar industry were ignored, even though they showed that the Jr. Quality Engineer position at Tegra Medical, La Aurora required knowledge that was "distinct and uncommon in comparison to the knowledge of other similarly employed workers in the particular industry." U.S. Citizenship and immigration Servs., *Specialized Knowledge Beneficiaries (L-1B),* USCIS Policy Manual, Vol.2, Pt. L, Ch. 4

58. Additionally, the evidence provided responds directly to the non-exhaustive list of factors to consider when trying to determine specialized knowledge. U.S. Citizenship and Immigration Servs., *Specialized Knowledge Beneficiaries (L-1B),* USCIS Policy Manual, Vol.2, Pt. L, Ch. 4. While the list is illustrative, it highlights relevant considerations for assessing specialized knowledge. Tegra has provided evidence that the Jr. Process Engineering role meets these factors—factors that USCIS either overlooked or dismissed.

59. Not only did Defendants disregard pertinent evidence and arguments in the record, they failed to articulate a rational connection between the record and the decision, and offered an explanation for its decision that runs counter to the evidence, that there is no supporting documentary evidence to show that the beneficiary's knowledge rises above the level of his

peers. As such, USCIS' denial is arbitrary and capricious. *See Stellar IT Solutions, Inc. v. USCIS*, Civ. No. 18-2015 (RC), at 20-22 (D.C.D.C. Slip Op. 11/19/18) (USCIS lacked "reasonable justification" to deny H-1B petition, considering failure to acknowledge a company letter and other directly responsive evidence).

**B. USCIS Arbitrary and Capricious Finding, not in Accordance with the Law, that Mr. Flores Castillo's Position in the United States was not Specialized or Advanced.**

60. USCIS asserted that the company has "not provided sufficiently detailed information" and that "the record did not provide sufficient information about other employees" for USCIS to determine if the duties are more advanced than what is typical. Exhibit A at 11.

61. The claim that Tegra did not supply sufficient evidence to show that the beneficiary's knowledge is specialized is again irreconcilable with the evidence that was provided to USCIS.

62. In the RFE response, Tegra provided additional evidence to USCIS to provide more details about Mr. Flores Castillo's position in the United States, noting that the knowledge necessary for the Quality Engineer position requires a four-year degree along with 3-5 years of working in the manufacturing, quality and process disciplines. Exhibit C at 33. Additionally, an updated letter from Tegra confirms that Mr. Flores Castillo has both in-depth industry specific knowledge, such as FDA standards and Good Manufacturing Practices, along with expertise in Tegra-specific process validation and verification activities, which are highly technical processes that aren't often held by Quality Engineers. Exhibit C at 215-216, 220-225.

63. Tegra also provided job descriptions from jobs that are at a similar level to the Quality Engineer role from companies that are in the manufacturing industry, with the majority being from medical device manufacturers. Exhibit C at 220-225. On average, these jobs require a bachelor's degree, although one position did not require a formal degree, and three years of experience. Some of the medical device companies required knowledge of regulatory

requirements, such as FDA regulations and Good Manufacturing Practices, but none of the jobs required any knowledge of TMV, which is a highly specialized skill within quality engineering, especially in highly regulated industries like medical device manufacturing. These jobs also did not require any knowledge of other verification and validation techniques, such as IQ, OQ, or PQ. *See* Exhibit C at 220-225. USCIS failed to even mention this job comparison that was included in the RFE response in the denial.

64. This knowledge of TMV and other verification and validation techniques is not required for other similarly situated positions in the manufacturing industry, even in medical device manufacturing, yet is critical to Tegra's process and requires individuals that have experience in these tools to qualify for the Quality Engineer role. Exhibit C at 215-216.

65. Mr. Flores Castillo possessed highly sought-after knowledge before his transfer to the U.S. that he was able to bring to Tegra. His transfer brought a structure for essential quality engineering documents and other critical process flow documentation. Exhibit C at 28. This knowledge contributed significantly to the U.S. team by improving their documentation, process optimization, and problem-solving frameworks.

66. Additionally, Mr. Flores Castillo has directly improved Tegra's competitiveness in the market and provided significant value to the U.S. operations by automating processes that allowed for subsequent volume increases for various customers. *See* Exhibit C at 28, 131-165. This has culminated in Mr. Flores Castillo being instrumental in over $30 million in annual revenue for the company. *See* Exhibit C at 28, 167-182.

67. There is no indication that USCIS considered the evidence above along with the totality of the record, instead focusing on pointing out specific pieces of evidence that do not, by themselves, show that the position in the United States is specialized knowledge.

68. USCIS should be considering the "totality of the record" and "weigh all relevant factors," yet it is evident that they disregarded key evidence and arguments. *See Matter of Z-A-*, Adopted Decision 2016-02 at *4. The job requirements provided for positions that are similar in a similar industry were ignored, even though that showed that the Quality Engineer position at Tegra required knowledge that was "distinct and uncommon in comparison to the knowledge of other similarly employed workers in the particular industry." U.S. Citizenship and immigration Servs., *Specialized Knowledge Beneficiaries (L-1B),* USCIS Policy Manual, Vol.2, Pt. L, Ch. 4.

69. Additionally, the evidence provided responds directly to the non-exhaustive list of factors to consider when trying to determine specialized knowledge. While the list is illustrative, it provides potentially relevant factors to consider when determining specialized knowledge, and Tegra has provided evidence that the Process Engineering role meets these factors that USCIS did not consider or that they dismissed.

70. Not only did Defendants disregard pertinent evidence and arguments in the record, they failed to articulate a rational connection between the record and the decision, and offered an explanation for its decision that runs counter to the evidence, that Tegra did not provide sufficient information about other employees for USCIS to determine if the job requires specialized knowledge. As such, USCIS' denial is arbitrary and capricious.

**C. USCIS May Not Apply Ultra Vires Standards or Criteria Not Set Forth in Law or Regulation to Conclude the Evidence Petitioner Provided is Insufficient to Demonstrate Specialized Knowledge**

71. The proper standard of proof in determining eligibility for L-1B status is preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). This means it is incumbent upon the petitioner to establish that what it claims is more likely to be true than not.

72. This is a lesser standard than "clear and convincing evidence," and the "beyond a reasonable doubt" standard applied in criminal adjudications. In order for the Service to approve a petition, the petitioner is not required to remove any and all doubt as to eligibility. Rather, the petitioner will have proven its case by a preponderance of the evidence provided it submits relevant, probative, and credible evidence, considered "individually and within the context of the totality of the evidence," that leads to the conclusion that the claim is "more likely than not" or "probably" true. This is the case even if a Service adjudicator has some doubt about a claim. *Matter of Chawathe*, 25 I&N Dec. at 375-376.

73. The Service is free to take issue with the substance, credibility, or weight of the evidence submitted by Tegra in the record. However, in doing so, it is incumbent upon the Service to explain why it takes such a position. The agency is not permitted to ignore evidence or otherwise proceed as though probative evidence in the record does not exist. *Stellar IT Solutions, Inc. v. United States Citizenship and Immigration Services*, Civil Action No. 2018-2015 (D.D.C. 2018), Decided November 19, 2018, *at* p23; *Granite Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence contradicting its position." (quoting *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010)).

74. The Service cannot unilaterally apply a higher, unspecified standard, or invent novel ultra vires requirements for eligibility not set forth in the regulations—and—such application is arbitrary, capricious, and not in accordance with the law. *See Kazarian v. USCIS*, 596 F.3d 1115 at 3440-3441 (9th Cir. 2010); *Love Korean Church v. Chertoff*, 549 F.3d 749, 758 (9th Cir. 2008).

75. Defendants' decision demonstrates a focus on minor, irrelevant details and failure to consider the evidence as a whole and the pertinent factors, including: his previous approval in the same job; the nature and scope of Plaintiff Tegra's business; the complexity of the company's end-

to-end medical device manufacturing process; the sophistication of the company's proprietary machines; the nuance of the different stringent regulatory standards and how they interact; the scope of Mr. Flores Castillo's completed trainings and the trainings he provided; Mr. Flores Castillo's level of expertise and experience; and other factors that contribute to understanding the actual duties and role in the business.

76. The Service sets novel ultra vires standards in its denial decision, including requiring a comparison of Mr. Flores Castillo's role to similar roles in the company and assuming over 240 trainings provide knowledge that is easily transferable because each training was not described in detail. *See* Exhibit A at 9-10. No such requirements or benchmarks are required, nor even mentioned in the controlling statute, regulation, or policy materials.

77. While the Service impermissibly fixates on these very specific criteria not in law or regulation, it summarily dismisses the copious evidence of specialized knowledge provided by Plaintiff Tegra in the initial filing as well as the RFE response, without evidence or meaningful analysis.

78. Where the agency's "path of analysis" is misguided and "the inferences it produced are questionable," the agency action constitutes a violation of the APA under the arbitrary and capricious standard. *Motor Vehicle Mfrs.*, 463 U.S. at 44.

**D. L-1B Status Does Not Require a Comparison Soley to Employees of the Petitioning Company**

79. The Service takes issue in its Denial of the fact that Plaintiff Tegra did not provide evidence "to compare the beneficiary's training and experience" with other employees at the company. Exhibit A at 6, 8, 11.

80. While Tegra is required to show that the petitioner has specialized knowledge, and that can be done by providing comparisons to similar jobs at the same company, it can also be

demonstrated by showing that the beneficiary has distinct or uncommon knowledge in comparison to the knowledge of other similarly employed workers in the industry.

81. Tegra included comparisons to similarly situated positions in similar industries in order to show the knowledge required for both the position abroad and in the U.S. is distinct and uncommon in the industry. Defendant USCIS's assertion that the comparison must be limited solely to other employees within the company—and that the absence of such a comparison can serve, even in part, as a basis for an L-1B denial—is an arbitrary and capricious determination that is not in accordance with the law.

### E. USCIS's Assumptions that an Individual's Knowledge is Easily Transferrable is Arbitrary and Capricious and not in Accordance with the Law

82. The Service claimed in the denial that "based on the lack of evidence you provided" regarding the training, it "appeared that the knowledge gained is easily transferrable to another individual in your organization or within the field." Exhibit A at 7.

83. The training information was just one component of the extensive evidence submitted to establish that Mr. Flores Castillo possesses specialized knowledge within the meaning of 8 C.F.R. § 214.2(*l*)(1)(ii)(D).

84. USCIS is entitled to question the credibility, weight, or sufficiency of the evidence submitted. However, the Agency is not permitted to disregard evidence or make determinations based on unsupported assumptions. *See*, *e.g.*, *Granite Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence contradicting its position." (quoting *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010))).

85. While USCIS claimed the training information lacked sufficient detail, it went further by assuming that, without more detail, the knowledge gained must be easily transferable. This

assumption is improper, as nowhere in statute, regulation, or policy is an applicant required to prove how difficult knowledge is to transfer to establish specialized knowledge.

86. USCIS failed to evaluate the evidence in its totality, as required by its own policy guidance. *See* U.S. Citizenship and immigration Servs., *Specialized Knowledge Beneficiaries (L-1B),* USCIS Policy Manual, Vol.2, Pt. L, Ch. 8. (directing adjudicators to consider the totality of the evidence submitted). Completing 240 training courses over seven and a half years, while not determinative on its own, is a significant indicator of specialized knowledge. If USCIS believed the trainings carried less weight due to a lack of detailed descriptions, it could have assigned them less evidentiary value—but it could not simply assume, without any factual basis, that the knowledge gained was easily transferable.

87. By asserting that the lack of detail regarding the trainings means the knowledge gained must be easily transferable, USCIS improperly engaged in speculation rather than factual analysis. This approach allows USICS to dismiss individual pieces of evidence in isolation rather than assessing the petition holistically, as required by both the *Matter of Z-A-*, Adopted Decision 2016-02, and the USCIS Policy Manual.

88. There is no legal or regulatory requirement that a petitioner must prove how difficult it would be to transfer specialized knowledge. Rather, the proper inquiry is whether the beneficiary possesses knowledge that is distinct, advanced, or uncommon within the petitioning organization — an analysis that USCIS failed to properly conduct.

89. Defendants failed to properly consider all record evidence; reached factual conclusions as to the regulatory criteria unsupported by any evidence in the record; misconstrued the applicable regulations; impermissibly imposed evidentiary requirements beyond those required by Congress; and erroneously concluded that Plaintiff Luis Flores Castillo did not possess

specialized knowledge and that Plaintiff Tegra had not demonstrated that the positions of Jr. Quality Engineer in Costa Rica and Quality Engineer in the United States fell within a specialty occupation.

90. Defendants' errors, individually and in combination, are arbitrary, capricious, and in violation of the law. Consequently, Defendants acted arbitrarily, capriciously, and contrary to the law in violation of the APA, the INA, and the immigration regulations by denying Plaintiff Tegra's L-1B petition and extension.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiffs request the District Court of the District of Massachusetts grant the following relief:

1. Assume jurisdiction over this matter;
2. Hold unlawful and set aside Defendants' decision denying Plaintiff Tegra's L-1B petition on Form I-129 filed on behalf of Plaintiff Luis Flores Castillo;
3. Enter an Order requiring Defendants to approve Plaintiff Tegra's L-1B petition on Form I-129 filed on behalf of Plaintiff Luis Flores Castillo;
4. Award Plaintiffs their attorneys' fees and costs in this action pursuant to 28 U.S.C. § 2412(b), *et seq*., 5 U.S.C. § 504, and as otherwise permitted by law; and,
5. Grant such further relief as the Court deems just and proper.

DATED this 17th of April, 2025.

Respectfully submitted for the Plaintiffs,

s/ Mary L. Freeman-Lynde

Mary L. Freeman-Lynde, Esq.
Counsel for the Plaintiffs
Goldman & Partners Immigration Law LLC
125 Washington Street, Suite 204
Salem, MA 01970

Phone: (978) 219-5040
Fax: (617) 977-0928
molli@gpimmigration.com
MA Bar No. 696632

s/ Zachary L. Maria
Zachary L. Maria, Esq.
Pro Hac Vice Counsel (pending admission)
Green and Spiegel Midwest LLC
20600 Chagrin Blvd., Suite 703
Shaker Heights, OH 44122
Phone: (216) 896-0855
Fax: (216) 896-0724
zmaria@gands-us.com
OH Bar No. 0100051